Albert K. Orth v. Commissioner.
Albert K. Orth v. Commissioner
Docket No. 29933.
United States Tax Court
1952 Tax Ct. Memo LEXIS 226; 11 T.C.M. (CCH) 452; T.C.M. (RIA) 52137; May 12, 1952
*226 Charles L. Vann, C.P.A., 209 Peoples Bldg., Charleston, S.C., for the petitioner. S. Earl Heilman, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in income tax against petitioner for the calendar year 1943 in the amount of $7,513.48. Several issues are no longer in dispute, and the computations under Rule 50 will take them into account. The only question remaining for decision is whether petitioner, who in 1943 sold 211 shares of stock of Southern Printing and Publishing Company, realized long-term or short-term capital gain with respect to 161 of those shares. [The Facts] Petitioner resides in Charleston, South Carolina. He filed his 1943 income tax returns with the collector of internal revenue for the district of South Carolina. Petitioner was the sole owner of an unincorporated printing and publishing business. He incorporated the business under the laws of South Carolina on April 1, 1940, under the name of Southern Printing and Publishing Company, and conveyed all the assets of the business to the new corporation. The authorized capital stock was $25,000 to be divided into *227 250 shares of par value of $100 each. Although petitioner "subscribed" for 246 shares and four other persons "subscribed" for one share each, only 50 shares were issued at the formation of the corporation in 1940, and no other shares were issued or outstanding until December 31, 1942. Of the original 50 shares, 46 were issued to petitioner and the remaining 4 to the other subscribers. The 4 shares appear to have been qualifying shares and were kept in the physical possession of petitioner. All 50 shares were issued for the benefit of petitioner. On April 1, 1940, the date of incorporation, the books of the corporation show that petitioner was credited with $15,000, surplus with $2,342.30, and capital stock with $5,000. The corporation's only assets were those of the business contributed by petitioner. The petitioner's personal account on the corporation's books reflected the following: Albert Orth
Debits
Credits
1-01-40 Credit for assets turned over by Orth
$15,000.00
2-14-41 Credit by cash for note
1,000.00
3-31-41 Credit for rent
1,800.00
4-01-40
to
3-31-41 Debit account sundry items charged to his account during the
year
$ 459.01
3-31-41 Credit balance forwarded
17,340.99
$17,800.00
$17,800.00
4-01-41 By credit balance forwarded
$17,340.99
3-31-42 Credit for rent
1,800.00
4-01-41
to
3-31-42 Debit account sundry charges to his account for the year
1,788.94
3-31-42 Credit balance forwarded
17,352.05
$19,140.99
$19,140.99
4-01-42 By credit balance forwarded
$17,352.05
4-01-42
to
12-31-42 Credit for rents - $1,350.00 less sundry charges May 1942, $69.11
1,280.89
4-01-42
to
12-31-42 Debit account sundry charges to his account during 9 months
2,528.50
12-31-42 Debit account and credit to capital stock $16,100.00 and surplus
$4.44
16,104.44
$18,632.94
$18,632.94
*228 [Opinion] Interest was never paid on any part of the credit appearing in petitioner's personal account on the books of the corporation. At some time prior to December 31, 1942, petitioner had agreed to sell all of the stock in the corporation to one Lewis A. R. Nelson for $30,000. To satisfy the demands of the purchaser, 161 additional shares were issued on December 31, 1942, and on January 2, 1943, petitioner sold to Nelson all of the then outstanding 211 shares for $30,000. The balance sheet of the corporation on December 31, 1942, after the issuance of 161 shares to petitioner, showed capital stock of $21,100 and no account in the name of petitioner. The petitioner and the Government are in agreement that he realized a gain of $8,900 on the sale, and there is no dispute between them as to the allocation of basis and selling price as between the original 50 shares and the additional 161 shares. The issue is whether the gain allocable to the latter shares must be treated as short-term capital gain (growing out of the sale of an asset held for less than six months), as contended by the Commissioner. We think the petitioner must prevail. On April 1, 1940, petitioner became *229 the beneficial owner of all of the outstanding stock of the corporation. For reasons that are not entirely clear, all of the stock was not issued at that time, and petitioner was credited with $15,000 on the corporation's books. This amount, as well as subsequent additions to petitioner's personal account, did not represent true indebtedness of the corporation. Rather, the so-called indebtedness was in fact a capital item. No interest was paid, and we are satisfied from a study of the entire record that there was no intention to create a genuine indebtedness. Petitioner was the beneficial owner of all of the stock, and it was only to satisfy the demands of the purchaser that the additional 161 shares were issued. What petitioner sold on January 2, 1943, was all of the stock of the corporation; he had been the sole owner of all the stock in the corporation for more than two years. The issuance of the 161 additional shares merely reflected a capital interest which he already had and constituted no new asset with a new holding period. We conclude that the gain realized by petitioner upon the sale of all of his stock for $30,000 was long-term capital gain. Decision will be entered under *230 Rule 50.